THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANN KELLETT, et al.,

        Plaintiff(s),

  v.

ASSEMBLED PRODUCTS
CORPORATION, et al.,

        Defendant(s).

CASE No. 2:12-cv-00622-RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant New Albertson's Inc. ("Albertson's") Motion for Summary Judgment.[1] Dkt. # 13. Albertson's moves the court for an order granting summary judgment on Plaintiffs' common law negligence claim. *Id*. Having considered the memoranda, evidence, and the record herein, the court DENIES Defendant's motion for summary judgment for the reasons stated below.

## II. BACKGROUND

On February 26, 2011, John Surabian visited the Albertson's store in Mountlake Terrace, Washington, to shop for groceries. Dkt. # 18 at 3; Dkt. # 14 at 9 (Ex. A to Kugler Decl., Kellett Dep. 39:1-4, May 16, 2012). Mr. Surabian, who was eighty-two

---

[1] Defendant Assembled Products Corp. is not a party to this motion.

ORDER - 1

years old at the time, was accompanied by his grown daughter, Ann Kellett. Dkt. # 18 at 3; Dkt. # 14 at 5 (Ex. A to Kugler Decl., Kellett Dep. 25:22-23).  Upon entering the store, Ms. Kellett obtained Albertson's motorized electric cart for Mr. Surabian to use while shopping, as he had difficulty walking. Dkt. # 14 at 5, 7, and 8 (Ex. A to Kugler Decl., Kellett Dep. 25:14-15; 32:3-7; 33:12-14).  Ms. Kellett retrieved the only motorized cart available at that time and rode it to Mr. Surabian.[2] Dkt. # 19-1 at 3 (Ex. 1 to Davis Decl., Kellett Dep. 48:25-49:20). Ms. Kellett then dismounted and held the cart steady[3] to allow Mr. Surabian to get on. *Id.* at 7 (Ex. 1 to Davis Decl., Kellett Dep. 50:18-19; 51:24-53:3).  As Mr. Surabian was trying to board the cart, the cart suddenly "took off" and "jolted forward" approximately a half-cart to a full cart length, knocking Mr. Surabian over. *Id.* at 4, 5, 9, and 10 (Ex. 1 to Davis Decl., Kellett Dep. 53:13-18; 56:23-24; 57:16-22; 157:20-23; 158:15-23). According to Ms. Kellett, Mr. Surabian "rolled over right under the freezer," injuring his wrist and shoulder.[4] *Id.* at 7 (Ex. 1 to Davis Decl., Kellett Dep. 53:15-18; 159:5-24). Ms. Kellett also testified that prior to the boarding, Mr. Surabian was touching the cart, although she does not remember where or how. *Id.* at 5 (Ex. 1 to Davis Decl., Kellett Dep. 55:22-56:16).

Ms. Kellett, with the assistance of the customers and the store manager who happened to be nearby, helped Mr. Surabian get up and onto the cart, and Mr. Surabian continued shopping using the same cart. Dkt. # 14 at 18-19 (Ex. A to Kugler Decl., Kellett Dep. 61:2-12; 66:16-18); Dkt. # 15 (Stevens Decl.) ¶¶ 2 & 3.  On the day of the incident, there were no discussions between Ms. Kellett and any of the store employees regarding how the incident occurred.[5] Dkt. # 19-1 at 8 (Ex. 1 to Davis Decl., Kellett Dep.

---

[2] Ms. Kellett experienced no problem when she drove the cart. Dkt. # 14 at 23 (Ex. A to Kugler Decl., Kellett Dep. 150:10-12).
[3] Ms. Kellett had one hand on the back of the cart and her other hand was free, "ready to help [Mr. Surabian] if he needed it." *Id.* at 7 (Ex. 1 to Davis Decl., Kellett Dep. 52:21-53:3).
[4] Mr. Surabian has since passed away and is no longer available to testify.
[5] According to the store manager, the incident occurred outside the view of the closest store camera. Dkt. # 15 (Stevens Decl.) ¶ 3.

77:22-25).  A day or two later, however, Mr. Surabian returned to the store, and one of the store managers, under Mr. Surabian's direction, filled out the Customer Incident Form, which Mr. Surabian reviewed and signed.[6]  Dkt. # 14 at 36-37 (Ex. B to Kugler Decl., Karen Surabian Dep. 60:2-61:2, Oct. 25, 2012).  The cart Mr. Surabian used was circulated back into regular service at the store, and there were no reported problems with the cart during the subsequent year. Dkt. # 15 (Stevens Decl.) ¶¶ 10 & 12.  Albertson's electric carts, including the cart at issue, are serviced, maintained, and repaired by RCS Industrial/Roy's Cart Service ("RCS"), and the store employees do not perform any maintenance or repairs on the carts. Dkt. # 15 (Stevens Decl.) ¶¶ 6 & 7.

### III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp.*, 477 U.S. at 325.  If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.

---

[6] The form stated that Mr. Surabian "stepped out of mart cart, cart rolled away, slipped and fell." Dkt. # 14 at 38 (Ex. B to Kugler Decl., Customer Incident Form).  The form also indicated that there was nothing on the floor that caused Mr. Surabian's fall. *Id.*

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). If different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

Plaintiffs assert a negligence claim against Albertson's under a premises liability theory, arguing that Albertson's "failed to properly provide and maintain electric carts utilized by its patrons, and/or failed to properly supervise the use of electric shopping carts by its patrons."[7] Dkt. # 2 at 4 (Ex. A to Ambrosia-Walt Decl., Compl.) ¶ 17. In diversity actions, federal courts apply state substantive law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir.2001). A cause of action for negligence requires the plaintiff to establish the existence of a duty owed, breach of that duty, a resulting injury, and a proximate cause between the breach and the injury. *Mucsi v. Graoch Assocs. Ltd. P'ship # 12*, 144 Wn.2d 847, 854, 31 P.3d 684 (2001). In Washington, landowners owe a duty of reasonable care to invitees with respect to dangerous conditions on the land.[8] *Id.* at 855. Reasonable care requires landowners to inspect for dangerous conditions, "followed by such repair, safeguards, or warning as may be reasonably necessary." *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 139, 875 P.2d 621 (1994).

To determine landowner liability to invitees, Washington courts apply the principles contained in the Restatement (Second) of Torts § 343 (1965). *Iwai v. State*, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996). A possessor of land will be liable for physical harm caused to its invitees by a condition on the land only if the possessor:

---

[7] Albertson's contends that the Washington Product Liability Act ("WPLA") preempts and bars Plaintiffs' negligence claim. Dkt. # 13 at 7-9. Albertson's is mistaken. The WPLA preempted certain common law liability claims against a "product manufacturer" or "product seller." *See* RCW 7.72.010, 7.72.030, and 7.72.040. Here, because Albertson does not manufacture or sell the carts, the WPLA does not bar a negligence claim against Albertson's. *Bostwick v. Ballard Marine, Inc.*, 127 Wn. App. 762, 773, 112 P.3d 571 (2005) ("Nothing in the WPLA relieves one who is not a product seller [or product manufacturer] from liability for negligence.").

[8] It is undisputed that Mr. Surabian was an invitee on Albertson's property. Dkt. # 18 at 12.

(a) knows or in the exercise of reasonable care should have discovered the condition, and should realize that it poses an unreasonable risk of harm to such invitees;
(b) should expect that they either will not discover or realize the danger or will fail to protect themselves against it; and
(c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343 (1965).  Thus, Plaintiffs must demonstrate that the motorized cart owned by Albertson's constituted an unreasonably dangerous condition on Albertson's premises that a reasonably prudent property owner would have discovered and remedied or warned about.

Albertson's argues that a premises liability theory under § 343 of the Restatement applies "only to conditions of a landowner's premises" and, therefore, imposes no duty "with respect to the operability of [electric shopping carts] merely because [the carts were] located in [the Albertson's] store." Dkt. # 13 at 9; Dkt. # 21 at 4 (emphasis in original).  The court disagrees.  Whether a duty exists in the context of a negligence claim is a question of law. *Mucsi*, 144 Wn.2d at 854.  The court finds that a shopping cart owned and furnished by a proprietor for public use constitutes a "condition on the land" giving rise to the existence of the duty of keeping premises reasonably safe.  *See*, *e.g.*, *Dae Kon Kwon v. Costco Wholesale Corp.*, 469 Fed. Appx. 579, No. 10-15847, 2012 WL 605808 (9th Cir. Feb. 27, 2012) (premises liability applied to Costco's flatbed shopping carts at a warehouse) (unpub.); *Schneider v. Costco Wholesale Corp.*, 136 Wn. App. 1054, No. 57999-1-I, 2007 WL 214592 (Wash. Ct. App. Div. I Jan. 29, 2007) (premises liability applied to Costco's shopping carts at a store) (unpub.); *Hudson v. Wal-Mart Stores East, L.P.*, 4:06CV00035, 2007 WL 2107466, at *2 (W.D. Va. July 20, 2007) (premises liability applied to Wal-Mart's motorized shopping scooter at a parking lot); *Albergo v. Deer Park Meat Farms*, 138 A.D.2d 656, 526 N.Y.S.2d 580 (N.Y. App. 2 Dept. March 28, 1988) (premises liability applied to a proprietor's shopping pushcart

with a defective wheel). Accordingly, here, Restatement (Second) of Torts § 343 applies and establishes the existence of a duty owed to Mr. Surabian by Albertson's.[9]

The court finds that Plaintiffs identified genuine issues of material fact as to whether a reasonably prudent property owner would have discovered and remedied or otherwise warned about an unreasonably dangerous condition created by the cart. Here, Plaintiffs' expert, Gerard Schaefer, performed an inspection, testing, and evaluation of the cart and opined that the cart "has several, critical design and maintenance defects making it unsafe under certain circumstances." Dkt. # 20 (Schaefer Decl.) ¶ 3. Specifically, Mr. Schaefer found that "the cart could engage and surge forward without the user being fully seated." *Id*. ¶ 4. Mr. Schaefer stated that the seat's built-in safety mechanism was inadequate in that it allowed the cart to be powered "while the user simply places a hand on the seat while standing on the ground." *Id*. Mr. Schaefer also found that the direction button used to move the cart forward had worn down to such an extent that "the cart could be shifted into gear inadvertently." *Id*. ¶ 5. The expert's conclusion that the cart can surge forward when the operator places a hand on the seat and "brushes the directional button with very light pressure" (*Id*. ¶ 7) is consistent with Plaintiffs' testimony that the cart jolted forward when Mr. Surabian touched it, despite the fact that he was not yet seated. From this evidence, a reasonable trier of fact could determine that the alleged defects in the cart made it an unreasonably dangerous condition on Albertson's premises, and that Albertson's failure to inspect for the dangerous condition fell below the standard of care. *See Tincani*, 124 Wn.2d at 139.

Mr. Schaefer also opines that properly conducted routine inspections, as advised by the cart's Owner's Manual,[10] likely would have detected the dangerous condition

---

[9] Albertson's reliance on *Bostwick v. Ballard Marine, Inc.*, 140 Wn. App. 1008, No. 58245-3-I, 2007 WL 2297112 (Wash. Ct. App. Div. I Aug. 13, 2007) is misplaced. *See* Dkt. # 21 at 3. *Bostwick* dealt, among other things, with applicability of Restatement (Second) of Torts § 408 to "persons who make a business of leasing chattels." *Bostwick*, 140 Wn. App. at 3-4. Since Albertson's is not in a business of leasing motorized carts, *Bostwick* is inapposite.

created by the cart. *Id*. ¶ 7. Even if the Manual was ignored, as urged by Albertson's (Dkt. # 21 at 7), Plaintiffs' evidence and Albertson's own declaration that a motorized cart is removed from service and stored "until RCS *inspects* it" ((Stevens Decl.) ¶¶ 6 & 7 (emphasis added)), created a triable issue regarding the reasonableness of Albertson's inspection and maintenance policy. In addition, Plaintiffs introduced evidence that Albertson's alleged failure to identify and remedy the dangerousness of the condition created by the cart "was a significant contributing cause of Mr. Surabian's accident." Dkt. # 20 (Schaefer Decl.) ¶ 9. Thus, construing this evidence in a light most favorable to Plaintiffs, the court finds that a fact-finder could reasonably conclude that Albertson's was negligent and that its negligence was a proximate cause of Mr. Surabian's fall.[11]

## IV. CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is DENIED.

---

[10] *Barton v. State, Dept. of Transp.*, 147 Wn. App. 1021, No. 61015-5-I, 2008 WL 4838687 (Wash. Ct. App. Div. I Nov. 10, 2008) (unpub.) is distinguishable because the carts' Owner's Manual does not provide safety techniques that are inconsistent with the standard of care, but merely advises the owner to check certain items daily "[f]or optimum Cart availability and performance." *See* Dkt. # 20-3 at 7 (Ex. 3 to Schaefer Decl.).

[11] In reply, Albertson's argues that Plaintiffs have failed to demonstrate actual or constructive notice of the dangerous condition in the cart. Dkt. # 21 at 5-7. The general rule governing liability for failure to maintain premises in a reasonably safe condition allows a plaintiff to demonstrate an unsafe condition that either is caused by the proprietor or its employees, or of which the proprietor has actual or constructive notice. *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 460, 805 P.2d 793 (1991). However, notice need not be shown in self-serving establishments when the nature of the business or method of operation is such that the existence of unsafe conditions on the premises is reasonably foreseeable. *Id.* at 461; *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 50, 666 P.2d 888 (1983). Here, a trier of fact could reasonably conclude that Albertson's is a self-service operation. A trier of fact could also reasonably conclude that Albertson's provided the motorized shopping carts for their customers so that elderly or infirm individuals who had difficulty walking could serve themselves throughout the store. Since Mr. Surabian's accident was allegedly caused by a motorized cart while he was grocery shopping, a trier of fact could reasonably conclude that his accident was foreseeably related to the store's self-service mode of operation. To hold otherwise would allow proprietors to immunize themselves from any liability for their duty to inspect, maintain, and make safe motorized electric carts offered for public use in their establishments by contracting away their duties to third parties. *See Tincani*, 124 Wn. 2d at 93.

1  Dated this 8th day of May, 2013.

2

3

4  The Honorable Richard A. Jones
5  United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER - 8