THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANN KELLETT, et al.,

        Plaintiff(s),

  v.

ASSEMBLED PRODUCTS
CORPORATION, et al.,

        Defendant(s).

CASE No. C12-622 RAJ

AMENDED[1] ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant New Albertson's Inc. ("Albertson's") Motion for Summary Judgment.[2] Dkt. # 13. Albertson's moves the court for an order granting summary judgment on Plaintiffs' common law negligence claim. *Id*. Having considered the memoranda,[3] evidence, and the record herein, the court DENIES Defendant's motion for summary judgment for the reasons stated below.

---

[1] This order WITHDRAWS and AMENDS the court's May 8, 2013 order. Dkt # 24.
[2] Defendant Assembled Products Corp. is not a party to this motion.
[3] The court has considered the briefing on reconsideration as well. Dkt. ## 27, 29, 30. However, since the court did not authorize Albertson's to file a reply, the court has disregarded it. Dkt. # 32.

ORDER - 1

## II. BACKGROUND

On February 26, 2011, John Surabian visited the Albertson's store in Mountlake Terrace, Washington, to shop for groceries. Dkt. # 18 at 3; Dkt. # 14 at 9 (Ex. A to Kugler Decl., Kellett Dep. 39:1-4, May 16, 2012). Mr. Surabian, who was eighty-two years old at the time, was accompanied by his grown daughter, Ann Kellett. Dkt. # 18 at 3; Dkt. # 14 at 5 (Ex. A to Kugler Decl., Kellett Dep. 25:22-23). Upon entering the store, Ms. Kellett obtained an Albertson's motorized electric cart for Mr. Surabian to use while shopping, as he had difficulty walking. Dkt. # 14 at 5, 7, and 8 (Ex. A to Kugler Decl., Kellett Dep. 25:14-15; 32:3-7; 33:12-14). Ms. Kellett retrieved the only motorized cart available at that time and rode it to Mr. Surabian.[4] Dkt. # 19-1 at 3 (Ex. 1 to Davis Decl., Kellett Dep. 48:25-49:20). Ms. Kellett then dismounted and held the cart steady[5] to allow Mr. Surabian to get on. *Id*. at 7 (Ex. 1 to Davis Decl., Kellett Dep. 50:18-19; 51:24-53:3). As Mr. Surabian was trying to board the cart, the cart suddenly "took off" and "jolted forward" approximately a half-cart to a full cart length, knocking Mr. Surabian over. *Id*. at 4, 5, 9, and 10 (Ex. 1 to Davis Decl., Kellett Dep. 53:13-18; 56:23-24; 57:16-22; 157:20-23; 158:15-23). According to Ms. Kellett, Mr. Surabian "rolled over right under the freezer," injuring his wrist and shoulder.[6] *Id*. at 7 (Ex. 1 to Davis Decl., Kellett Dep. 53:15-18; 159:5-24). Ms. Kellett also testified that prior to the boarding, Mr. Surabian was touching the cart, although she does not remember where or how. *Id*. at 5 (Ex. 1 to Davis Decl., Kellett Dep. 55:22-56:16).

Ms. Kellett, with the assistance of the customers and the store manager who happened to be nearby, helped Mr. Surabian get up and onto the cart, and Mr. Surabian continued shopping using the same cart. Dkt. # 14 at 18-19 (Ex. A to Kugler Decl.,

---

[4] Ms. Kellett experienced no problem when she drove the cart. Dkt. # 14 at 23 (Ex. A to Kugler Decl., Kellett Dep. 150:10-12).

[5] Ms. Kellett had one hand on the back of the cart and her other hand was free, "ready to help [Mr. Surabian] if he needed it." *Id*. at 7 (Ex. 1 to Davis Decl., Kellett Dep. 52:21-53:3).

[6] Mr. Surabian has since passed away and is no longer available to testify.

Kellett Dep. 61:2-12; 66:16-18); Dkt. # 15 (Stevens Decl.) ¶¶ 2 & 3. On the day of the incident, there were no discussions between Ms. Kellett and any of the store employees regarding how the incident occurred.[7] Dkt. # 19-1 at 8 (Ex. 1 to Davis Decl., Kellett Dep. 77:22-25). A day or two later, however, Mr. Surabian returned to the store, and one of the store managers, under Mr. Surabian's direction, filled out the Customer Incident Form, which Mr. Surabian reviewed and signed.[8] Dkt. # 14 at 36-37 (Ex. B to Kugler Decl., Karen Surabian Dep. 60:2-61:2, Oct. 25, 2012). The cart Mr. Surabian used was circulated back into regular service at the store, and there were no reported problems with the cart during the subsequent year. Dkt. # 15 (Stevens Decl.) ¶¶ 10 & 12. Albertson's electric carts, including the cart at issue, are serviced, maintained, and repaired by RCS Industrial/Roy's Cart Service ("RCS"), and the store employees do not perform any maintenance or repairs on the carts. Dkt. # 15 (Stevens Decl.) ¶¶ 6 & 7.

### III. ANALYSIS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets

---

[7] According to the store manager, the incident occurred outside the view of the closest store camera. Dkt. # 15 (Stevens Decl.) ¶ 3.

[8] The form stated that Mr. Surabian "stepped out of mart cart, cart rolled away, slipped and fell." Dkt. # 14 at 38 (Ex. B to Kugler Decl., Customer Incident Form). The form also indicated that there was nothing on the floor that caused Mr. Surabian's fall. *Id.*

the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000). If different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

Plaintiffs assert a negligence claim against Albertson's under a premises liability theory, arguing that Albertson's "failed to properly provide and maintain electric carts utilized by its patrons, and/or failed to properly supervise the use of electric shopping carts by its patrons."[9] Dkt. # 2 at 4 (Ex. A to Ambrosia-Walt Decl., Compl.) ¶ 17. In diversity actions, federal courts apply state substantive law. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1090 (9th Cir.2001). A cause of action for negligence requires the plaintiff to establish the existence of a duty owed, breach of that duty, a resulting injury, and a proximate cause between the breach and the injury. *Mucsi v. Graoch Assocs. Ltd. P'ship # 12*, 144 Wn.2d 847, 854, 31 P.3d 684 (2001). In Washington, landowners owe a duty of reasonable care to invitees with respect to dangerous conditions on the land.[10] *Id.* at 855. Reasonable care requires landowners to inspect for dangerous conditions, "followed by such repair, safeguards, or warning as may be

---

[9] Albertson's contends that the Washington Product Liability Act ("WPLA") preempts and bars Plaintiffs' negligence claim. Dkt. # 13 at 7-9. Albertson's is mistaken. The WPLA preempted certain common law liability claims against a "product manufacturer" or "product seller." *See* RCW 7.72.010, 7.72.030, and 7.72.040. Here, because Albertson does not manufacture or sell the carts, the WPLA does not bar a negligence claim against Albertson's. *Bostwick v. Ballard Marine, Inc.*, 127 Wn. App. 762, 773, 112 P.3d 571 (2005) ("Nothing in the WPLA relieves one who is not a product seller [or product manufacturer] from liability for negligence.").

[10] It is undisputed that Mr. Surabian was an invitee on Albertson's property. Dkt. # 18 at 12.

reasonably necessary." *Tincani v. Inland Empire Zoological Society*, 124 Wn.2d 121, 139, 875 P.2d 621 (1994).

To determine landowner liability to invitees, Washington courts apply the principles contained in the Restatement (Second) of Torts § 343 (1965). *Iwai v. State*, 129 Wn.2d 84, 93, 915 P.2d 1089 (1996). A possessor of land will be liable for physical harm caused to its invitees by a condition on the land only if the possessor:
    (a) knows or in the exercise of reasonable care should have discovered the condition, and should realize that it poses an unreasonable risk of harm to such invitees;
    (b) should expect that they either will not discover or realize the danger or will fail to protect themselves against it; and
    (c) fails to exercise reasonable care to protect them against the danger.
Restatement (Second) of Torts § 343 (1965). Thus, Plaintiffs must demonstrate that the motorized cart owned by Albertson's constituted an unreasonably dangerous condition on Albertson's premises that a reasonably prudent property owner would have discovered and remedied or warned about.

Albertson's argues that a premises liability theory under § 343 of the Restatement applies "only to conditions of a landowner's premises" and, therefore, imposes no duty "with respect to the operability of [electric shopping carts] merely because [the carts were] located in [the Albertson's] store." Dkt. # 13 at 9; Dkt. # 21 at 4 (emphasis in original). The court disagrees. Whether a duty exists in the context of a negligence claim is a question of law. *Mucsi*, 144 Wn.2d at 854. The court finds that a shopping cart owned and furnished by a proprietor for public use constitutes a "condition on the land" giving rise to the existence of the duty of keeping premises reasonably safe. *See Frederickson v. Bertolino's Tacoma, Inc.*, 131 Wn. App. 183, 127 P.3d 5 (2005) (premises liability theory applied to chair in restaurant); *see also Dae Kon Kwon v. Costco Wholesale Corp.*, 469 Fed. Appx. 579, No. 10-15847, 2012 WL 605808 (9th Cir. Feb. 27, 2012) (premises liability theory applied to Costco's flatbed shopping carts at a

warehouse) (unpub.). Accordingly, here, Restatement (Second) of Torts § 343 applies and establishes the existence of a duty owed to Mr. Surabian by Albertson's.

For a land possessor to be liable to a business invitee for an unsafe condition of the land, the possessor must have actual or constructive notice of the unsafe condition. *Ingersoll v. DeBartolo, Inc.*, 123 Wash. 2d 649, 652, 869 P.2d 1014 (Wash. 1994). Constructive notice arises where the condition has existed for such time as would have afforded the proprietor sufficient opportunity, in the exercise of ordinary care, to have made a proper inspection of the premises and to have removed the danger. *Id.* Plaintiffs must establish that Albertson's had, or should have had, knowledge of the dangerous condition in time to remedy the situation before the injury or to warn the plaintiff of the danger. *Id.*

Here, there is no evidence of actual notice. However, Plaintiffs have presented evidence of constructive notice. Plaintiffs' expert, Gerard Schaefer, performed an inspection, testing, and evaluation of the carts on May 9, 2012, and opined that the cart "has several, critical design and maintenance defects making it unsafe under certain circumstances." Dkt. # 20 (Schaefer Decl.) ¶ 3. Specifically, Mr. Schaefer found that "the cart could engage and surge forward without the user being fully seated." *Id*. ¶ 4. Mr. Schaefer stated that the seat's built-in safety mechanism was inadequate in that it allowed the cart to be powered "while the user simply places a hand on the seat while standing on the ground." *Id*. Mr. Schaefer also found that the direction button used to move the cart forward "had worn down to the point where the cart could be shifted from 'neutral' to 'forward' with very light pressure" and "inadvertently." *Id*. ¶ 5. Mr. Schaefer also tested the other carts which "required a conscientious, intentional effort on the part of the user to depress the direction button to shift the cart from neutral' into forward.'" *Id.* The expert's conclusion that the subject cart could surge forward when the operator places a hand on the seat and "brushes the directional button with very light pressure" (*Id*.

¶ 7) is consistent with Ms. Kellett's testimony that the cart jolted forward when Mr. Surabian touched it, despite the fact that he was not yet seated.

Mr. Schaefer also opines that properly conducted routine inspections, as advised by the cart's Owner's Manual,[11] likely would have detected the dangerous condition created by the cart. *Id.* ¶ 7. Even if the manual is ignored, as urged by Albertson's (Dkt. # 21 at 7), evidence that if Albertson's became "aware of any possible need for service[,]" then the motorized cart would be removed from service and stored "until RCS *inspects* it" ((Stevens Decl.) ¶¶ 6 & 7 (emphasis added)), created a triable issue regarding the reasonableness of Albertson's inspection and maintenance policy.

Drawing all reasonable inferences in favor of the non-moving party, the court finds that a reasonable jury could determine that the dangerous condition existed for such time as would have afforded the proprietor sufficient opportunity to inspect the cart.[12]

Finally, Albertson's argues that there is no evidence of proximate cause. There are two elements to proximate cause: Cause in fact and legal causation. *Hartley v. State*, 103 Wash. 2d 768, 777, 698 P.2d 77 (Wash. 1985). Cause in fact is the physical

---

[11] Contrary to plaintiffs' arguments, nothing in the owners' manual "requires" routine inspections. Rather, the manual provides that for "optimum Cart availability and performance, the following items *should* be checked daily[.]" Dkt. # 20-3 at 7 (emphasis added). The court agrees with Albertson's that the owners' manual does not create an independent duty to inspect. Nevertheless, it provides evidence relevant to the reasonableness of Albertson's inspection and maintenance policy.

[12] In the context of slip and fall cases, the Washington Supreme Court has noted that the "constructive notice rule requires the plaintiff to establish how long the specific dangerous condition existed in order to show that the proprietor should have noticed it." *See Wiltse v. Albertson's Inc.*, 116 Wash. 2d 452, 458, 805 P.2d 793 (Wash. 1991). Here, Mr. Schaefer's testimony that the subject cart's directional button was significantly worn down compared to the other carts suggests that the condition had been present for quite some time. The fact that Mr. Schaefer did not inspect the carts until May 2012 does not preclude plaintiffs from presenting his testimony to the jury, particularly where Ms. Kellett's testimony of the cart surging forward is consistent with Mr. Schaefer's expert analysis. *See Fredrickson*, 131 Wash. App. at 189 ("Ordinarily, it is a question of fact for the jury whether, under all of the circumstances, a defective condition existed long enough so that it would have been discovered by an owner exercising reasonable care."). At this stage, all reasonable inferences must be made in favor of the non-moving party.

connection between an act and an injury – the "but for" consequence of an act. *Id.* at 778. Legal causation involves a determination of whether liability should attach as a matter of law given the existence of cause in fact. *Id.* at 779. "The focus in the legal causation analysis is whether, as a matter of policy, the connection between the ultimate result and the act of the defendant is too remote or insubstantial to impose liability." *Schooley v. Pinch's Deli Market, Inc.*, 134 Wash. 2d 468, 478-79, 951 P.2d 749 (Wash. 1998). A determination of legal liability will depend upon mixed considerations of logic, common sense, justice, policy, and precedent. *Id.* at 749. Where the facts are not in dispute, legal causation is for the court to decide as a matter of law. *Id.* at 478.

Alberston's argues that this case is remarkably similar to *Marshall v. Bally's Pacwest, Inc.*, 94 Wash. App. 372, 972 P.2d 475 (Wash. App. 1999) in light of the lack of specific facts as to what happened and how the cart's controls were being used at the time of the incident. Albertson's is mistaken. In *Marshall*, there was no evidence that plaintiff was thrown from the machine, what caused her to be thrown from the machine, or how she was injured. *Id.* at 379-80. Here, Ms. Kellett testified that as Mr. Surabian was trying to board the cart, the cart suddenly "took off" and "jolted forward" approximately a half-cart to a full cart length, knocking Mr. Surabian over. Dkt. # 19-1 at 4, 5, 9, and 10 (Ex. 1 to Davis Decl., Kellett Dep. 53:13-18; 56:23-24; 57:16-22; 157:20-23; 158:15-23). Mr. Surabian "rolled over right under the freezer," injuring his wrist and shoulder. *Id.* at 7 (Ex. 1 to Davis Decl., Kellett Dep. 53:15-18; 159:5-24). Ms. Kellett also testified that prior to the boarding, Mr. Surabian was touching the cart, although she does not remember where or how. *Id.* at 5 (Ex. 1 to Davis Decl., Kellett Dep. 55:22-56:16). Plaintiffs' expert also testified regarding critical design and maintenance defects, including the fact that the directional button was so worn down that the cart could surge forward when the operator placed a hand on the seat and "brushe[d] the directional button with very light pressure." Dkt. # 20 (Schaefer Decl.) ¶ 7. This expert opinion is consistent with Ms. Kellett's testimony that the cart jolted forward when Mr. Surabian

touched it, despite the fact that he was not yet seated.  In addition, Plaintiffs introduced evidence that Albertson's alleged failure to identify and remedy the dangerousness of the condition created by the cart "was a significant contributing cause of Mr. Surabian's accident." Dkt. # 20 (Schaefer Decl.) ¶ 9.  Thus, Plaintiffs have presented sufficient evidence of proximate causation to preclude summary judgment.

Accordingly, viewing the evidence in the light most favorable to Plaintiffs, the court finds that a reasonable trier of fact could determine that the alleged design and maintenance defects in the cart made it an unreasonably dangerous condition on Albertson's premises, and that Albertson's failure to inspect for the dangerous condition fell below the standard of care. *See Tincani*, 124 Wn.2d at 139.

## IV. CONCLUSION

For all the foregoing reasons, Defendant's motion for summary judgment is DENIED.

Dated this 25th day of June, 2013.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER - 9